IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      No. 09-2050 JEC

MOSES MAESTAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

THIS MATTER came before the Court on Defendant's *Motion to Suppress Physical Evidence and Police Statements*, filed February 3, 2010 (Doc. 44)("Motion"). After considering the Motion, the Government's response, the relevant authority and having heard testimony and oral argument in a hearing on March 4, 2010, I denied the Motion at the close of the hearing. I enter this Memorandum Opinion and Order consistent with my ruling.

I.    **Background**

Defendant Maestas was charged with unlawfully, knowingly and intentionally distributing 5 grams and more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count I); unlawfully, knowingly and intentionally possessing with the intent to distribute 50 grams and more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count II); and carrying a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely possession with intent to

distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, as charged in Count II (Count III).[1] Superceding Indictment, filed December 3, 2009 (Doc. 32).

These charges stemmed from two controlled purchases of methamphetamine conducted by the Federal Bureau of Investigation (FBI). At issue in the Motion were (1) physical evidence seized and (2) statements made following Defendant's arrest on June 29, 2009.

On June 29, 2009, a controlled purchase was arranged through a Confidential Informant ("CI") who introduced Defendant Maestas to an undercover officer. The purchase was to take place at the CI's apartment located at 13101 Mountain Road in Albuquerque, New Mexico. A surveillance team was positioned at that location, including FBI Special Agent (SA) Johnson, who testified at the hearing. Transcript of Hearing on Motion to Suppress (Tr.), at 20:2-5. SA Johnson saw Maestas arrive at 13101 Mountain Road in a maroon Nissan Maxima at approximately 4:50 p.m., accompanied by a male and a female. *Id.* SA Johnson watched Defendant step out of the car and enter the apartment. It was undisputed for purposes of this Motion that, once inside, Maestas realized he needed a scale to weigh the methamphetamine prior to selling it. Maestas gave his brother forty dollars and sent him out to buy one. In the meantime, Maestas received a phone call informing him that the residence was surrounded by law enforcement. Tr. at 29:19-25. SA Johnson testified that at that point, he observed "Mr. Maestas come out of the apartment, he looked around. He went toward those garbage cans. He went to the small of his back while walking towards those garbage cans, that garbage can area. But once he went inside [the area], I could not see him." Tr. at 29:6-12. After Maestas emerged from the common garbage can area, the team arrested him. The team then took Maestas back

into the apartment in handcuffs and waited for Maestas' brother to arrive. Tr. at 30:21-24. After the Defendant was arrested, officers searched the area outside the apartment complex and located a bag of methamphetamine in a common area garbage can and a handgun hidden near the garbage can. At the suppression hearing, Defendant admitted to possessing the methamphetamine for sale and throwing it in the garbage can when he got the phone call but denied any knowledge of the gun. Tr. at 10:5-25, 11:1-25. In his Motion, Defendant argued that his Fourth Amendment protections were violated by the warrantless search of the apartment dwelling's curtilage and that his waiver of Miranda rights was invalid because he was under the influence of methamphetamine at the time.

## II.   Discussion

### A.   Physical Evidence

Defendant Maestas asserted that his Fourth Amendment rights were violated when the authorities searched outside the 13101 Mountain Road premises where the drugs and the gun giving rise to the relevant charges were found. He sought suppression of the physical evidence on this basis. The government responded that Defendant had no legitimate expectation of privacy in the residence, let alone the common garbage area outside it, and therefore lacked standing to challenge the constitutionality of the search. Defendant Maestas testified at the hearing in an effort to establish an expectation of privacy as a guest at the apartment.

In that vein, Maestas testified that after separating from his wife, from March through June of 2009 – and specifically on June 29, 2009 – he "was living in motels," went to 13101 Mountain Road during the day sometimes to "get high," and knew the tenant or owner of that residence as a man going by the name of "Road Dog." Tr. at 5:18-25. When asked if he stayed

overnight at Road Dog's one-bedroom apartment, Maestas said occasionally he was too high to leave and get a motel so he would stay there. Maestas described the apartment as a "party house." Tr. at 7:1-19. In answer to the question, "it's fair to say you were not living at the 13101 Mountain address [in June of 2009]?" Maestas answered "[n]ot at that period of time, I wasn't living there, but it was a place that I would go when I was staying in motels. I was there often." Tr. at 8:18-22. Maestas testified that Road Dog would tell him to go into the bedroom to sleep if he wanted to, because Maestas would stay awake for "weeks and months at a time" and he looked tired. Tr. at 9:1-10. Maestas testified that he kept his clothing in his truck but would occasionally "get cleaned up" at the apartment. Tr. at 9:19-25.

At the hearing, I found that Defendant Maestas failed in his burden to establish a privacy interest in the dwelling and certainly not the exterior, common garbage area where the physical evidence was located. Accordingly, Maestas lacked a subjective expectation of privacy necessary to challenge the search. *See United States v. Higgins*, 282 F.3d 1261, 1269-70 (10th Cir. 2002). The line of cases defense counsel cited in support of overnight guest privacy expectation in the context of warrantless entry into the home are distinguishable on their facts. *See, e.g., Minnesota v. Olson*, 595 U.S. 91, 110 S.Ct. 1684 (1990). Moreover, even if Maestas' connection to the home had been less tenuous and he was the type of overnight guest to which Fourth Amendment privacy expectation has been assigned, the items were located is an area shared with other apartment residents where garbage is placed outside for pickup. Surely Defendant Maestas has established no legitimate, reasonable expectation of privacy in that area.[2] *See United States v. Cavely*, 318 F.3d 987, 994-95 910th Cir. 2003); *United States v. Henderson*, 190 Fed.Appx. 667 (10th Cir. 2006).

**B.    Statements**

Maestas also argued that his statements to authorities post-arrest at the FBI headquarters must be suppressed because his waiver of *Miranda* rights was not knowingly and intelligent, as he was "intoxicated from the recent ingestion of methamphetamine and other controlled substances." Motion at 2.

The Fifth Amendment states: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Relying on that provision, the Supreme Court has held that if police take a suspect into custody and interrogate him, they must inform him of his *Miranda* rights, or his responses cannot be introduced into evidence at trial to establish his guilt. *See Berkemer v. McCarty*, 468 U.S. 420, 429 (1984).

In order to be effective, a waiver must be made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. A court's inquiry into a waiver's validity has two "distinct dimensions." *Smith v. Mullin*, 379 F.3d 919, 932-33 (10th Cir. 2004). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Id.* The Government bears the burden of showing "both an uncoerced choice and the requisite level of comprehension." *Id.*; *U.S. v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996). In this case, Defendant Maestas did not argue that his statements were involuntary or

coerced, and the only question was whether the statements were made with the requisite awareness.

Upon initial arrival at the FBI office, Maestas was brought into an interrogation room, given a bottle of water, and allowed to use the restroom. Tr. at 21:1-3. SA Johnson then read him an Advice of Rights Form. Tr. at 21: 3-4. SA Johnson testified that he "read his rights per the form, and at the bottom of the form is a paragraph that [he] allow[ed] Maestas to read, and ask[ed] him if he would be willing to talk to" Johnson and Maestas said he would. Tr. 22:7-12. Maestas then read the form and signed it. *Id.; See also* Government's hearing Exhibit 1. Special Agents Collister Moore and Jeremy Clegg were also present. SA Johnson described Maestas' appearance when he read and signed the form as calm, alert, and his demeanor respectful the entire time. Tr. at 21:14-25; 24:10-15. Johnson Testified that Maestas showed no signs of intoxication. Tr. at 24:16-17. The Advice of Rights Form was signed three hours after Maestas' arrest. *See* Tr. at 28:12-17. Johnson testified that after waiving his rights and signing the form, Maestas indicated a willingness to cooperate in exchange for leniency. During those discussions, Maestas – to show he was earnest – called someone and asked her if she still had " his stuff." He then hung up and offered to make the deal happen for authorities. Tr. at 26:10- 14. SA Johnson also testified that Maestas further offered to "arrange for a truckload of marijuana to be shipped to his apartment." Maestas made additional, incriminating statements to authorities in the course of attempting to obtain leniency and that Maestas at no point appeared to be under the influence of methamphetamine. *See generally* Tr. at 26-28. In fact, the only reference to drug use was that Maestas told SA Johnson that he "had a quarter ounce habit" but did not indicate whether he had used that day, or how frequently he used a "quarter ounce." Tr. at 27:8-13.

The totality of the circumstances here established that Defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment right against compelled self-incrimination protected in Miranda v. Arizona, 384 U.S. 436, 444 (1966), when he spoke to authorities. As the Government argued, and the credible testimony at the hearing bore out, Maestas exhibited presence of mind on June 29, 2009. According to his own testimony, he reacted swiftly to dispose of evidence when he learned the house was surrounded. Similarly. he showed presence of mind to decide what he might do to gain leniency and acted accordingly. Finally, according to credible testimony from SA Johnson, Defendant displayed characteristics consistent with the requisite level of comprehension for a valid waiver of rights.

### III.  Conclusion

In summary, I determined after hearing testimony at the hearing that Defendant Maestas held no reasonable no expectation of privacy in the dwelling at 13101 Mountain Road in Albuquerque, New Mexico or its curtilage. Accordingly, Defendant's Fourth Amendment rights were not violated by the search. I further determined that Defendant's waiver of rights under Miranda v. Arizona was knowing, voluntary, and intelligent. Finding no Fifth Amendment violation, I declined to suppress Defendant's post-arrest statements.

WHEREFORE,

**IT IS ORDERED** that Defendant's *Motion to Suppress Physical Evidence and Police Statements*, filed February 3, 2010 (Doc. 44) is **DENIED**.

Dated April , 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE